IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| TED KNOX, # N-92676, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 17-cv-494-SMY |
| | ) | |
| WARDEN BUTLER, | ) | |
| WARDEN HARRINGTON, | ) | |
| KENNETH HAMILTON, | ) | |
| WINTERS, | ) | |
| SUPERVISOR JOHN DOE #1, | ) | |
| JOHN TROST, | ) | |
| ANGELA CRAIN, | ) | |
| WALTERS, | ) | |
| and WEXFORD HEALTH SOURCES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

This matter is before the Court for a merits review of Counts 1 and 2, pursuant to 28 U.S.C. § 1915A. Under § 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). The Court must dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

Plaintiff Ted Knox is currently incarcerated at Menard Correctional Center ("Menard"), where he is serving a life sentence. He brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 on May 10, 2017 and filed his First Amended Complaint (Doc. 7) on May 24, 2017. On May 31, 2017, the Court severed Plaintiff's claims in Counts 3, 4, and 5 into separate

1

actions, leaving only Counts 1 and 2 remaining in the instant case.

The pending claims in this case after the severance order are as follows:

**Count 1:** Eighth Amendment claim against Hamilton, Winters, Butler, Harrington, and Supervisor John Doe #1, for subjecting Knox to a humiliating strip search, excessive force, and for deliberate indifference to Knox's medical needs arising from the blows he sustained, on April 14, 2014;

**Count 2:** Eighth Amendment claim for deliberate indifference to medical needs, against Trost, Crain, Walters, and Wexford Health Sources, Inc., for delaying and denying medical care to Knox after the April 14, 2014, incident of excessive force.

(Doc. 9, p. 6). The factual allegations in the First Amended Complaint (Doc. 7) which relate to these claims are summarized below.

On April 14, 2014, the Orange Crush state-wide tactical unit conducted a shakedown of Plaintiff's cell block, awakening him with yelling and banging on cell bars as they entered the unit. (Doc. 7, p. 4-7). Two unidentified Orange Crush officers yelled at Plaintiff and his cellmate because they were not "standing in the cell naked." (Doc. 7, p. 4). Hamilton (Tact Officer) yelled for Plaintiff to "get naked and lift up [his] nuts." *Id.* Plaintiff complied, and Hamilton ordered him to "open up [his] mouth and wiggle [his] tongue around." *Id.* Plaintiff objected to placing his hand in his mouth because he had just used that hand to lift his genitals, to which Hamilton replied, "[w]hy do you think I am giving you a direct order dumb ass." *Id.* Hamilton then made Plaintiff turn around and open his buttocks as wide as he could and threatened to drag Plaintiff off to segregation naked. The other Orange Crush officer watched and laughed.

After this strip search, Hamilton ordered Plaintiff to put on his pants, shirt and boots, but no underwear or socks. When Plaintiff was about to be handcuffed, he showed Hamilton his medically-authorized double-cuff permit (MCP), which was issued because Plaintiff is morbidly

obese and has arthritis in his left shoulder. (Doc. 7, p. 4). Hamilton knocked the documents out of the cell bars and yelled that he didn't want to see any "damn medical papers" and that Plaintiff needed to lose weight really fast because he "wasn't in the mood for any bull-shit." (Doc. 7, p. 5). When Plaintiff asked to speak with a nurse or Orange Crush supervisor, Hamilton again threatened Plaintiff with segregation if Plaintiff refused to be single-cuffed. Because of Hamilton's threat to drag him to segregation, Plaintiff submitted to the single-cuff restraints, which caused him great pain.

As Plaintiff exited the cell, Hamilton struck him on the back multiple times with his oak stick, yelling for Plaintiff to "keep your fat head down before I knock it off." *Id.* Plaintiff and his cellmate were ordered to move to the prison chapel walking in "nuts-to-butt fashion." *Id.* Plaintiff describes this as being forced to bow his head downward so it would touch the butt of the prisoner in front of him. While Plaintiff marched to the prison chapel in this manner, Orange Crush Supervisor John Doe #1 struck him in the ribs and back multiple times while yelling at him to "keep the line tight, no gaps fat ass." *Id.*

Plaintiff was lined up with other inmates in the prison chapel where he was forced to remain standing with his hands single-cuffed in the back and his head lowered so his chin rested on his chest. He was made to remain in this "stress position" for 4 hours, despite the fact that the chapel contained more than enough chairs for the inmates to be seated. After the first hour, Plaintiff began to feel light-headed and dizzy, his heart started beating rapidly and he had severe neck and back pain. (Doc. 7, pp. 5-6) He began to lose his balance. Winters responded by striking Plaintiff on the back with his stick, yanking Plaintiff's cuffs upward and yelling for Plaintiff to stop moving or he would be dragged off to segregation. The yanking and beating caused Plaintiff severe pain. Plaintiff told Winters that he had a MCP, that the single-cuffing

3

was causing severe pain to his neck, back and shoulders and that he was dizzy from being in the standing stress-position for over an hour. Plaintiff asked to see a nurse. Winters told him to shut up and stand still or he would go to segregation. (Doc. 7, p. 6).

Plaintiff called out to Butler and Harrington, who were in the chapel overseeing the operation. Although Plaintiff got their attention, Butler and Harrington failed to intervene when Winters "viciously struck" Plaintiff again with his oak stick. *Id.*

Following the April 14, 2014, incident, Plaintiff made several verbal and written requests for urgent medical care because he continued to feel dizzy and light-headed. Additionally, his neck was swollen and his shoulders, back and neck were in severe pain from the blows and 4 hours of standing in the stress position.

On April 25, 2014, Walters (nurse) came to Plaintiff's cell in response to his medical requests. Plaintiff informed her of his symptoms. Walters said that she was "only there to do protocol," and that Plaintiff would not be examined until the prison came off level-1 lockdown status. (Doc. 7, p. 8). Walters checked Plaintiff's blood pressure which registered high at 150/98. Plaintiff complained that he was still dizzy, light-headed and experiencing pain in his back and shoulders, and asked to speak with a supervisor. Walters yelled that she did not have to contact Crain (nurse supervisor) or anyone else because Wexford "follows 'administrative decisions'" regarding inmates not being removed from cells during a level-1 lockdown. *Id.*

Plaintiff continued to submit requests for urgent medical care. On April 29, 2014, Walters came back and told Plaintiff to stop asking to see her because she had already told him he would not be examined until the level-1 lockdown ended. Plaintiff reiterated his complaints about the dizziness and pain. Walters yelled back, "if you lose some dam [sic] weight maybe you would be able to cuff-up like a normal person." *Id.*

4

On May 8, 2014, an officer told Plaintiff that his medical call pass had been postponed due to the lockdown. (Doc. 7, pp. 8-9). On May 12, 2014, Plaintiff's housing unit (Easthouse) was taken off level-1 lockdown status.

Plaintiff was finally taken to the Health Care Unit on May 28, 2014. He saw Dr. Trost who informed him that no matter how much Plaintiff complained, medical staff "must follow the Administrative decision(s) which states inmates are not to be removed from their cells for examination(s) during level-1 lockdowns." (Doc. 7, p. 9). Plaintiff asked to see this policy or rule in writing. Trost responded, "this policy has been accepted by us," and commented that "you guys need to stop getting the prison placed on lockdown, if you want to get out of the cells for treatment." *Id.* Dr. Trost diagnosed Plaintiff with hypertension and extended his MCP for double-cuffing for another year.

Based on these facts, Plaintiff seeks compensatory and punitive damages. (Doc. 7, pp. 7, 9).

## Merits Review Pursuant to 28 U.S.C. § 1915A

The Court will begin with a preliminary note concerning the handling of Orange Crush cases in the Southern District of Illinois. Count 1 of Plaintiff's complaint raises allegations similar to the pleading in *Ross v. Gossett*, Case No. 15-cv-309-SMY-SCW, which was filed in this Court on March 19, 2015. The plaintiff in *Ross* is seeking injunctive relief and damages on behalf of himself and a class of prisoners who were subjected to similar strip searches while incarcerated at Illinois prisons during 2014. Should the *Ross* class be certified, Plaintiff could potentially be a member of that class. Due to the similarities between the two cases and the need to conserve judicial resources, Plaintiff's case was transferred to the undersigned judge. With this in mind, the Court will evaluate Plaintiff's complaint pursuant to 28 U.S.C. § 1915A.

Given the similarity between Plaintiff's claims and the Complaint in *Ross* (with regards to his Orange Crush-related allegations), the fact that the Complaint in *Ross* was permitted through screening and a motion to dismiss was denied (as to Counts 1, 2, 3, and 5 in that case) (*see Ross v. Gossett*, Case No. 15-cv-309-SMY-SCW, Doc. 76, Jan. 28, 2016), the Court is of the opinion that Count 1 in this case cannot be dismissed at this time. Count 2, which alleges deliberate indifference to Plaintiff's injuries sustained in the Orange Crush shakedown described in Count 1, also survives preliminary review under § 1915A.

**Count 1 – Excessive Force/Deliberate Indifference to Medical Needs**

The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment and is actionable under § 1983. *See Wilkins v. Gaddy*, 559 U.S. 34 (2010); *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000). An inmate must show that an assault occurred and that "it was carried out 'maliciously and sadistically' rather than as part of 'a good-faith effort to maintain or restore discipline.'" *Wilkins*, 559 U.S. at 40 (citing *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)). An inmate seeking damages for the use of excessive force need not establish serious bodily injury to make a claim, but not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Wilkins*, 559 U.S. at 37-38 (the question is whether force was de minimis, not whether the injury suffered was de minimis); *see also Outlaw v. Newkirk*, 259 F.3d 833, 837-38 (7th Cir. 2001).

Here, Plaintiff alleges that Hamilton subjected him to a humiliating strip search, ignored his medical permit for the use of double handcuffs and struck Plaintiff with his stick. Winters and Supervisor John Doe #1 also struck Plaintiff and Winters yanked Plaintiff's cuffs, inflicting further pain on him. Winters ignored Plaintiff's request for medical assistance during the 4 hours

6

he was forced to stand in a stress position. Each of these actions supports Plaintiff's Eighth Amendment claims against these Defendants. Plaintiff also states a claim in Count 1 against Butler and Harrington, who watched Plaintiff being struck by Winters, yet failed to take any action. *See Byrd v. Brishke*, 466 F.2d 6, 11 (7th Cir. 1972) (officer may be held liable for failing to intervene when another officer abuses a prisoner); *see also Lanigan v. Vill. of E. Hazel Crest*, 110 F.3d 467, 477 (7th Cir. 1997); *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994) (collected cases); *Archie v. City of Racine*, 826 F.2d 480, 491 (7th Cir. 1987).

**Count 1** shall proceed for further review, against Butler, Harrington, Hamilton, Winters, and Supervisor John Doe #1 (Tact Officer Supervisor - Orange Crush team). However, because this claim involves the same events and similar allegations as those now pending in *Ross v. Gossett*, Case No. 15-cv-309-SMY-SCW, Count 1 shall be severed from this action and consolidated with *Ross*.

**Count 2 – Denial of Medical Care**

In order to state a claim for deliberate indifference to a serious medical need, an inmate must show that he (1) suffered from an objectively serious medical condition; and (2) that the defendant was deliberately indifferent to a risk of serious harm from that condition. An objectively serious condition includes an ailment that significantly affects an individual's daily activities or which involves chronic and substantial pain. *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). "Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk.

Delaying medical treatment may constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Gomez v. Randle*, 680 F.3d

7

859, 865 (7th Cir. 2012) (internal citations and quotations omitted). *See also Farmer v. Brennan*, 511 U.S. 825, 842 (1994); *Perez v. Fenoglio*, 792 F.3d 768, 777-78 (7th Cir. 2015). However, the Eighth Amendment does not give prisoners the right to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Further, a defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation. *See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008).

Here, Plaintiff describes physical symptoms that satisfy the objective component of an Eighth Amendment claim – he was dizzy and light-headed after standing in a stress position for hours, and these symptoms persisted for many days. His neck was swollen, and he was in severe pain from the blows he suffered. The remaining question is whether the prison's medical providers acted or failed to act with deliberate indifference to a known risk of serious harm to Plaintiff from these symptoms.

Plaintiff experienced an initial delay of 10 days before any medical provider responded to his requests for care. From her first encounter with Plaintiff, Walters refused to examine him, other than taking his blood pressure on one occasion. She took no steps to address his pain or medical concerns. She informed Plaintiff that "Wexford follows 'administrative decisions'" regarding not removing inmates from their cells during a lockdown. (Doc. 7, p. 8).

Plaintiff was not taken to Health Care until May 28, 2014 – some 6 weeks after he first requested medical attention for his symptoms. At that time, Dr. Trost addressed Plaintiff's hypertension and extended his medical double-cuff permit, while emphasizing that medical staff must follow the "administrative decision" providing that inmates cannot be removed from their

cells for medical examinations during a level-1 lockdown. (Doc. 7, p. 9). These delays and the refusal of Walters and Dr. Trost to provide medical care for Plaintiff during the lockdown support a claim for deliberate indifference to his medical needs that warrants further review.

As for Wexford Health Sources, Inc., ("Wexford"), this corporation employs Defendants Walters and Trost and provides medical care at the prison, but it cannot be held liable solely on that basis. A corporation can be held liable for deliberate indifference only if it had a policy or practice that caused the alleged violation of a constitutional right. *Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004). *See also Jackson v. Ill. Medi-Car, Inc.,* 300 F.3d 760, 766 n.6 (7th Cir. 2002) (private corporation is treated as though it were a municipal entity in a § 1983 action). Here, Plaintiff has alleged that individual Defendants Walters and Trost either acted or failed to act as a result of an official policy espoused by Defendant Wexford – specifically, the policy to deny examinations and/or medical care to inmates during an institutional lockdown. Therefore, Plaintiff has asserted a colorable claim against Wexford at this stage.

Finally, Plaintiff includes Nursing Supervisor Crain as a defendant, but does not set forth any allegations against her, other than the fact that Walters mentioned her name while informing Plaintiff about the policy to "follow administrative decisions" on not removing inmates from their cells during a level-1 lockdown. (Doc. 7, p. 8). Plaintiff's allegations do not indicate that he had any contact with Crain or that she had any part in Walters' or Trost's decision-making regarding their treatment (or non-treatment) of Plaintiff. Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under § 1983, the individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005) (internal quotations and citations

9

omitted). Thus, in order to state a claim against a defendant, a plaintiff must describe what each named defendant did (or failed to do) that violated the plaintiff's constitutional rights. Plaintiff has not done so here with respect to Crain. Therefore, Crain shall be dismissed from the action without prejudice at this time and Plaintiff's deliberate indifference claim in **Count 2** shall proceed only against Walters, Trost, and Wexford Health Sources, Inc.

Plaintiff's claims in Count 2 for denial and delay of medical attention following the injuries he sustained on April 14, 2014, are distinct from the claims and events under consideration in *Ross v. Gossett*, Case No. 15-cv-309-SMY-SCW. Therefore, Count 2 shall remain in the instant case, while Count 1 is severed and consolidated with the ongoing action in *Ross v. Gossett*.

### Pending Motion

Plaintiff's motion for recruitment of counsel (Doc. 3) shall be referred to the United States Magistrate Judge for further consideration.

### Disposition

**IT IS ORDERED** that Plaintiff may proceed on **COUNT 1** against **BUTLER, HARRINGTON, HAMILTON, WINTERS,** and **JOHN DOE #1 (Tact Officer Supervisor – Orange Crush team)**, and on **COUNT 2** against **TROST, WALTERS,** and **WEXFORD HEALTH SOURCES, INC**.

Defendant **CRAIN** is **DISMISSED** from the action without prejudice.

**IT IS FURTHER ORDERED** that **COUNT 1** of this case shall be **SEVERED** from this action into a new case, which shall be **CONSOLIDATED** with *Ross v. Gossett*, Case No. 15-cv-309-SMY-SCW for all further proceedings. *Ross v. Gossett* shall be the lead case. All future pleadings with respect to **COUNT 1** shall be filed in *Ross v. Gossett* and contain case number

15-cv-309-SMY-SCW. The Clerk of Court is **DIRECTED** to let the record in *Ross v. Gossett* reflect this consolidation. Plaintiff shall not be assessed an additional filing fee in connection with the severance.

**IT IS FURTHER ORDERED** that as to **COUNT 2**, which shall remain and proceed in this case (Case No. 17-cv-494-SMY), the Clerk of Court shall prepare for Defendants **WALTERS, TROST,** and **WEXFORD HEALTH SOURCES, INC.**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the First Amended Complaint (Doc. 7), and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that as to **COUNT 1**, which shall be consolidated with *Ross v. Gossett*, the Clerk of Court shall prepare for Defendants **BUTLER, HARRINGTON, HAMILTON,** and **WINTERS:** (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the First Amended Complaint (Doc. 7), a copy of this Memorandum and Order, and a copy of the operative Complaint in *Ross v. Gossett*, Case No. 15-cv-309-SMY-SCW (Doc. 197 in *Ross*), to each of these Defendants' place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps

to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Service shall not be made on Defendant **SUPERVISOR JOHN DOE #1 (Tact Officer Supervisor – Orange Crush team)** until such time as he has been identified by name in a properly filed motion for substitution of parties. Plaintiff is instructed to confer with counsel in the *Ross v. Gossett* case regarding the status of discovery of the appropriate parties' names in that case, after counsel has had a reasonable opportunity to review Plaintiff's consolidated claim in **COUNT 1**.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants **WALTERS, TROST,** and **WEXFORD HEALTH SOURCES, INC.** are **ORDERED** to timely file an appropriate responsive pleading to the First Amended Complaint in this action (Case No. 17-cv-494-SMY) and shall not waive filing a reply pursuant to 42 U.S.C.

§ 1997e(g).

Defendants **BUTLER, HARRINGTON, HAMILTON,** and **WINTERS** are **ORDERED** to timely file an appropriate responsive pleading to the operative Complaint **in *Ross v. Gossett*, Case No. 15-cv-309-SMY-SCW**, if they have not already done so, and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to **United States Magistrate Judge Reona J. Daly** for further pre-trial proceedings, which shall include a determination on the pending motion for recruitment of counsel (Doc. 3).

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Daly for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: July 2, 2017**

                                                _s/STACI M. YANDLE_____
                                                United States District Judge