# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TED KNOX, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 17-CV-494-SMY-RJD |
| | ) |
| JOHN TROST, WALTERS, and | ) |
| WEXFORD HEALTH SOURCES, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

This matter is before the Court on the Report and Recommendation ("Report") of United States Magistrate Judge Reona J. Daly (Doc. 60), recommending that Defendants Trost and Wexford's Motion for Summary Judgment for Failure to Exhaust Administrative Remedies (Doc. 48) be granted. Plaintiff filed a timely objection (68). For the following reasons, Judge Daly's Report and Recommendation is **ADOPTED In part and REJECTED in part**.

## Background

Plaintiff Ted Knox, who is currently incarcerated at Menard Correctional Center ("Menard"), filed suit on May 10, 2017 pursuant to 42 U.S.C. § 1983, related to an incident that occurred on April 14, 2014 (Doc. 1). Specifically, Plaintiff claims he was subjected to a humiliating strip search and excessive force at the hands of the "Orange Crush" tactical team and that he was subsequently denied medical care for his injuries. The claims related to Orange Crush were severed and consolidated with *Ross v. Gossett*, Case No. 15-cv-309-SMY-MAB (Count 1). The following claim remains in this case:

> Count 2: Eighth Amendment claim for deliberate indifference to medical needs, against Trost, Crain, Walters, and Wexford Health Sources, Inc., for delaying and denying medical care to Knox after the April 14, 2014, incident of excessive force.

(Doc. 10).

Defendants Trost and Wexford[1] moved for summary judgment, arguing that Plaintiff failed to exhaust administrative remedies prior to filing suit.

In his Amended Complaint, Plaintiff alleges that after the incident on April 14, 2014, he required but was denied urgent medical care because he was dizzy and had pain in his neck and shoulders (Doc. 7, p. 8). He was seen by Nurse Walters two weeks later, on April 25, 2014 and April 29, 2014. In response to his complaints of pain, Nurse Walters only took his blood pressure and told him that no further medical care would be provided until the institution was off lockdown. Thereafter, on May 28, 2014, Plaintiff was seen by Dr. Trost who informed him it was an administrative policy that inmates would not be removed from their cells for medical examinations during a lockdown and that medical staff follow this policy. Plaintiff alleges that after his examination with Dr. Trost, medical permits were extended, he was diagnosed as having hypertension and he was "placed on 'outpatient status'" (*Id*. 7). Plaintiff does not allege in the Amended Complaint that Dr. Trost failed to provide a front-cuff permit or that he provided deficient medical care on May 28, 2014 or at any other point. Rather, Plaintiff alleges that medical care was denied by Nurse Walters and delayed because of a policy of denying medical care or call passes during a lockdown.

---

[1] The Clerk of Court entered default as to these defendants on November 3, 2017 because they had failed to file a responsive pleading by the September 5, 2017 deadline (Doc. 25). Default was set aside on May 8, 2018 (Doc. 35). Plaintiff filed a motion requesting that the Court reconsider that Order (Doc. 44); that Motion has been denied (Doc. 70).

These above-referenced events are reflected in Plaintiff's June 18, 2014 grievance (Doc. 49-1). In the grievance, Plaintiff complains that Nurse Walters failed to provide actual care in the face of Plaintiff's complaints of severe pain and that she told Plaintiff that he would not get further care until the lockdown was lifted. Plaintiff further asserts that this sentiment was repeated by "the doctor," (i.e. Dr. Trost) and that Dr. Trost "refused to provide me with a Front-cuff permit because he claimed institutional security wouldn't allow it anymore."

On November 28, 2018, Magistrate Judge Reona J. Daly issued a Report setting forth the evidence presented by the parties on the issue of exhaustion, the applicable law, the requirements of the administrative process, and her conclusions. Judge Daly identified Plaintiff's June 18, 2014 grievance as the only relevant grievance for consideration. She concluded that while Plaintiff fully exhausted the grievance by appealing to the Director of Illinois Department of Corrections, the grievance was insufficient to exhaust Plaintiff's claims in this lawsuit against Dr. Trost and Wexford. As a result, Judge Daly recommends that Plaintiff's claim against Dr. Trost and Wexford be dismissed without prejudice for failure to exhaust administrative remedies.

## Discussion

Because Plaintiff filed a timely objection, the undersigned will undertake a *de novo* review of the Report. 28 U.S.C. § 636(b)(1)(B), (C); FED. R. CIV. P. 72(b); SDIL-LR 73.1(b); *see also Govas v. Chalmers*, 965 F.2d 298, 301 (7th Cir. 1992). *De novo* review requires the Court to "give fresh consideration to those issues to which specific objections have been made" and to make a decision "based on an independent review of the evidence and arguments without giving any presumptive weight to the magistrate judge's conclusion." *Mendez v. Republic Bank*, 725 F.3d 651, 661 (7th Cir. 2013). The Court "may accept, reject or modify the magistrate judge's recommended decision." *Id*.

As an initial matter, Plaintiff maintains that Judge Daly should have held a hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008). However, upon review of the record, this Court finds there were no facts in dispute as to the grievance or the grievance process that necessitated an evidentiary hearing. Next, Plaintiff argues that the grievance clearly implicated his claim against Dr. Trost and Wexford because the injuries he allegedly sustained in the April 14, 2014 incident are the very reason he asked for a front cuff permit from Dr. Trost.

The Prison Litigation Reform Act requires prisoners to exhaust all available administrative remedies before filing suit. 42 U.S.C. § 1997e(a). Proper exhaustion requires that inmates file complaints and appeals in the place, at the time, and in the manner the prison's administrative rules require. *Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002). Illinois' Administrative Code specifies that a grievance must contain "factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint." 20 Ill.Admin.Code § 504.810 (2015). Grievances are not meant to mirror Complaints filed in federal court nor is Plaintiff required to set forth every theory of relief that he may present in a Complaint or identify every defendant later sued. *See Jones v. Bock*, 549 U.S. 199, 219 (2007). However, grievances should provide the prison with "a fair opportunity to address his complaint." *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011).

The focus of Plaintiff's June 18, 2014 grievance was the care he received from Nurse Walters and it is not clear that he was grieving the denial of medical care by Dr. Trost. Plaintiff does mention that he was seen and examined by Dr. Trost, but he references primarily what Trost said about the conduct of Walters. Moreover, as to the requested relief for the grievance, Plaintiff asserts that he would like Nurse Walters reprimanded for failing to provide medical care, but he

makes no mention of Dr. Trost by name or reference.  Finally, Plaintiff's statement regarding the denial of a front-cuff permit is not sufficient to put IDOC on notice that Plaintiff was complaining about a denial of medical treatment from Dr. Trost.  For these reasons, This Court agrees with Judge Daly's conclusion that Plaintiff's June 18, 2014 grievance did not exhaust administrative remedies as to his claims against Dr. Trost.

However, the Court finds that Plaintiff did exhaust his administrative remedies as to Wexford.  The focus of Plaintiff's Amended Complaint is that Nurse Walters failed to provide adequate care and that there was a delay in care because of the policy that no medical care or call passes would be provided during a lockdown.  These claims are reflected in Plaintiff's June 18, 2014 grievance and they were repeated by the grievance officer who indicated "lockdown procedure followed" in addressing Plaintiff's claims (Doc. 49-1, p. 2).  Plaintiff further ties these policies to Wexford in his Amended Complaint and his grievance by alleging that Dr. Trost (an employee of Wexford) told him that medical personnel went along with lockdown procedures in scheduling patients for medical care.  Thus, even though Plaintiff did not specifically mention Wexford in his grievance, the grievance is sufficient to exhaust his policy and practice claim against it.  Judge Daly's Report is **REJECTED** in this regard.

For the foregoing reasons, the Court adopts Judge Daly's Report and Recommendation in part.  Accordingly, Defendants' Motion for Summary Judgment (Doc. 48) is **GRANTED** as to Plaintiff's claim against Defendant Dr. Trost and that claim is **DISMISSED without prejudice**; Defendants' Motion is **DENIED** as to Plaintiff's claim against Defendant Wexford.  Plaintiff shall proceed on the following claim:

> Count 2: Eighth Amendment claim for deliberate indifference to medical needs, against Walters and Wexford Health Sources, Inc., for delaying and denying medical care to Knox after the April 14, 2014, incident of excessive force.

**IT IS SO ORDERED.**

**DATED: March 15, 2019**

                                                      **s/ Staci M. Yandle**
                                                      **STACI M. YANDLE**
                                                      **United States District Judge**